UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
TAE H. KIM et al.,
                                    :
               Plaintiffs,          MEMORANDUM & ORDER
                                    :
          -against-                 12 Civ. 6344 (MHD)
                                    :
KUM GANG, INC. et al.,
                                    :
               Defendants.
------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


        On March 19, 2015 we issued a decision granting judgment to

eleven plaintiffs following a bench trial on their claims under the

Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the New York

Labor Law § 190 et seq., and related New York Labor Department

regulations. Kim v. Kum Gang, Inc., 2015 WL 2222438 (S.D.N.Y. Mar.

19, 2015). In the wake of that decision, plaintiffs have filed an

application seeking an award of attorney's fees and out-of-pocket

expenses. (Docket nos. 147-53). Defendants have not responded to

this motion, although they communicated an untimely request --

which we rejected -- that the court delay adjudication of the

motion pending determination of defendants' appeal from the

judgment. (Endorsed Order dated May 14, 2015; see May 12, 2015

letter to the Court from Kenneth F. McCallion, Esq. [docket no.

1

156]).[1]

   For the reasons that follow, we grant plaintiffs' motion and award them $715,116.00 in fees and $51,137.17 in disbursements.

### Plaintiffs' Application

   Plaintiffs list eight lawyers from three organizations who worked on their behalf and for whose work they seek a fee award. (See Pls.' Mem. 3 [docket no. 148]). For each they proffer time records reflecting hours spent on specified tasks. (Declaration of Kenneth Kimerling, Esq. dated Apr. 20, 2015 ["Kimerling Decl."] Ex. 1; Declaration of Elizabeth Joynes, Esq. dated Oct. 31, 2014 ["Joynes Decl."] Ex. 1; Affidavit of Laura Huizar, Esq. dated Aug. 14, 2014 ["Huizar Aff."] Ex. 1; Declaration of Bethany Y. Lin, Esq. dated Apr. 16, 2015 ["Li Decl."] Ex. 1; Declaration of Joanna Shally, Esq. dated Apr. 20, 2015 ["Shally Decl."] Ex. A[2]).

---

[1] We understand that defendant Kum Gang Inc. has filed for bankruptcy protection under Chapter 11. (See May 12, 2015 letter to the Court from Kenneth F. McCallion, Esq.). Accordingly, our ruling with respect to "defendants" on the current fee-and-expense application excludes that entity.

[2] Exhibit A to Ms. Shelly's declaration includes the time records for all four Shearman & Sterling attorneys, including herself. (Shally Decl. ¶¶ 7-8).

Plaintiffs also specify the amount of attorney time for which they seek compensation and the hourly rates that they seek to have the court validate. Thus they document the following:

| Organization & Attorney | Hours Worked | Adjusted Hours | Requested Hourly Rate | Amount Requested |
|---|---|---|---|---|
| AALDEF[3] | | | | |
| Kenneth Kimerling | 280.8 | 280.8 | $400.00 | $112,320.00 |
| Bethany Y. Li | 367.3[4] | 367.3 | $275.00 $100.00[5] | $77,385.00 $8,590.00 |
| Latino Justice PRLDEF | | | | |
| Elizabeth Joynes | 598.0 | 487.8 | $200.00 $100.00[7] | $64,400.00[6] |

[3] "AALDEF" refers to the Asian American Legal Defense and Education Fund. (Kimerling Decl. ¶ 1).

[4] Ms. Li reports that she eliminated an unspecified amount of hours from her time records based on "billing judgment". (Li Decl. ¶ 5).

[5] Ms. Li seeks a rate of $100.00 for paralegal-type work, specifically, preparing damage charts, which consumed 85.9 hours. (Li Decl. ¶ 9)

[6] This total reflects a 30 percent reduction in calculated fees after the reduction in the total hours documented for Ms. Joynes. (Joynes Decl. ¶ 9).

[7] Ms. Joynes also asks for a $100.00 rate for paralegal-level work. (Joynes Decl. ¶ 8-10).

3

| | | | |
|---|---|---|---|
| Laura Huizar | 448.8 | n/a | $200.00[8] $100.00 | n/a[9] |

### Shearman & Sterling

| | | | |
|---|---|---|---|
| Joanna Shally | 106.8 | 106.8 | $600.00 | $64,080.00 |
| Grace J. Lee | 157.2 | 157.2 | $450.00[10] | $70,740.00 |
| Jung Yoo | 431.6 | 431.6 | $300.00 | $129,480.00 |
| Hee Won Marina Moon | 662.1 | 662.1 | $300.00 | $198,630.00 |

(See Kimerling Decl. ¶¶ 4-5[11]; Li Decl. ¶¶ 5, 9-10; Joynes Decl. ¶¶

---

[8] In Ms. Huizar's affidavit in support of plaintiffs' application, she does not specify an hourly rate. However, plaintiffs' memorandum makes sufficiently clear that they seek the listed bifurcated rate of $200.00/$100.00 since they sought -- and obtained -- those rates for her in a discovery-related fee application just before trial last June. Kim v. Kum Gang, Inc., 2014 WL 2514705, *1-2 (S.D.N.Y. June 2, 2014). (See Pls.' Mem. 3).

[9] Plaintiffs do not specify the amount of fees that they seek for Ms. Huizar's labors. Absent any proposed reduction, we infer at present that they seek an undiminished lodestar total of $89,760.00, which reflects 448.8 hours spent on legal tasks charged at $200.00 per hour. See infra p. 20 n.23. We note that while plaintiffs do not propose any reduction in Ms. Huizar's hours, the sum of hours provided at the end of her time records frame that figure as "Laura Huizar Total Before Reduction." (Huizar Aff. Ex. 1 p. 20).

[10] Ms. Lee's time records reflect a $600.00 billing rate (Shally Decl. Ex. A), but the total that plaintiffs seek for her work is based on the requested $450.00 rate.

[11] Mr. Kimerling originally filed a declaration that left blank the amount of fees sought for his work. He later

4

8-10; Ex. 1 to Huizar Aff.; Shally Decl. ¶ 7).

In addition to these fee totals, defendants seek reimbursement for a $350.00 filing fee paid by AALDEF (Kimerling Decl. ¶ 6), and disbursements by Shearman & Sterling totaling $50,787.17. (Shally Decl. ¶ 9 & Ex. B).

ANALYSIS

I. Fees

A. Basic Standards

Plaintiffs prevailed on their claims under both the FLSA and the New York Labor Law. Both statutes provide that prevailing plaintiffs are to be awarded "reasonable" fees as well as costs. 29

---

substituted a new page listing the total. (Compare docket no. 149 with docket no. 159).

U.S.C. § 216(b)[12]; N.Y. Labor Law §§ 198(1) & (1-a); id. § 663(1).[13]

See, e.g., Torres v. Gristede's Operating Corp., 519 Fed. Appx. 1,

3 (2d Cir. 2013); Black v. Nunwood Consulting, Ltd., 2015 WL

1958917, *3-4 (S.D.N.Y. Apr. 30, 2015). Determination of the amount

of fees under these statutes is to be made in the discretion of the

court and is customarily governed by standards recognized generally

for awarding statutorily authorized fees to a prevailing litigant.

See, e.g., Ayres v. 127 Rest. Corp., 201 F.3d 430, 1999 WL 1295335,

*1-2 (2d Cir. Dec. 23, 1999); Herrera v. Tri-State Kitchen & Bath,

Inc., 2015 WL 1529653, *13-14 (E.D.N.Y. Mar. 31, 2015); Liang Huo

v. Go Sushi 9th Ave., 2014 WL 1413532, *7 (S.D.N.Y. Apr. 10, 2014).


          In assessing an application of this kind, the court should

initially   derive   a   so-called   lodestar   figure,   that   is,   a

---

          [12] Section 216(b) states: "Any employer who violates the
[FLSA] shall be liable to the employee or employees affected . .
. . The court in such action shall . . . allow a reasonable
attorney's fee to be paid by the defendant, and costs of the
action."

          [13] Section 198(1) states that "the court may allow such
[prevailing] employee in addition to ordinary costs, a reasonable
sum, not exceeding fifty dollars for expenses which may be taxed
as costs." Section 198(1-a) provides that "[i]n any action . . .
in which the employee prevails, the court shall allow such
employee to recover . . . all reasonable attorney's fees . . . ."
See also N.Y. Labor Law §§ 198(1-b) & (1-d). Section 663(1)
states that a prevailing employee "paid by his employer less than
the wage to which he or she is entitled . . . shall recover . . .
together with costs all reasonable attorney's fees."

"presumptively reasonable fee", <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2007), based on "(1) a consideration of the number of hours actually spent by counsel and other personnel that are deemed reasonably necessary to the successful outcome for the client and (2) the setting of reasonable hourly rates for counsel, a criterion most recently, if opaquely described as 'the rate a paying client would be willing to pay.'"[14] <u>Briese Lichttechnik Vertiebs GmbH v. Langton</u>, 2010 WL 3958737, *1 (S.D.N.Y. Oct. 4, 2010) (quoting <u>Arbor Hill</u>, 522 F.3d at 190).[15] <u>See</u> <u>also</u> <u>Balestriere v. CMA Trading, Inc.</u>, 2014 WL 7404068, *3 (S.D.N.Y. Dec. 31, 2014) (citing cases). The lodestar is not "conclusive in all circumstances", but "there is 'a strong presumption' that the lodestar figure is reasonable." <u>Perdue</u>, 559 U.S. at 553-54. <u>Accord</u> <u>Millea</u>, 658 F.3d at 166.

---

[14] The Supreme Court has subsequently articulated a somewhat different description of the goal of the analysis, when it said that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 552 (2010).

[15] The term "lodestar" has recently had a somewhat up-and-down fate in the Second Circuit. After years of usage of this term, the Second Circuit seemed to banish it in the series of <u>Arbor Hill</u> opinions, <u>see</u> <u>Arbor Hill</u>, 522 F.3d at 188-90, but it has since made a comeback after the Supreme Court utilized it last year without questioning its appropriateness as a descriptor of the required fee analysis. <u>Perdue</u>, 559 U.S. at 553-54. <u>See</u> <u>also</u> <u>Millea v. Metro North R.R. Co.</u>, 658 F.3d 154, 166-69 (2d Cir. 2011).

B. Hourly Rates

To determine the appropriate hourly rates for this purpose, the court "looks to 'the prevailing market rates in the relevant community.'" Perdue, 559 U.S. at 551 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). In this case we have recently addressed the appropriate rates for most of the lawyers whose labors are the subject of the current motion, and found that the rates that plaintiffs now seek for these attorneys are appropriate. See Kim, 2014 WL 2514705 at *1-2. Accordingly, we adhere to those prior findings in this context as well.[16]

_____

[16] The approved rates are as follows: Mr. Kimerling - $400.00; Ms. Joynes - $200.00 & $100.00; Ms. Huizar - $200.00 & $100.00; Ms. Shally - $600.00; Ms. Lee - $450.00; Mr. Yoo - $300.00. Kim, 2014 WL 2514705 at *1-2. In approving the highest of these rates -- for Ms. Shally -- we note that several courts have deemed a top rate of $450.00 as the maximum for a senior law firm attorney in FLSA type cases. See, e.g., Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (citing cases). See also Easterly v. Tri-Star Transp. Corp., 2015 WL 337565, *10 (S.D.N.Y. Jan. 23, 2015); Aquilera v. Cookie Panache, 2014 WL 2115143, *3 (S.D.N.Y. May 20, 2014). That said, in 2012 a court in this district approved a $550.00 rate for a mid-size firm partner in an FLSA case (Outten & Golden), see Torres v. Gristede's Operating Corp., 2012 WL 3878144, *3-4 (S.D.N.Y. Aug. 6, 2012), and the Second Circuit subsequently affirmed that decision. Torres, 519 F. App'x at 3-4. In 2008, another Southern District court awarded $600.00 for a partner at this same firm. Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008).

We acknowledge that a $600-per-hour rate is beyond that which is typical for FLSA litigators in this district. However, given (1) the passage of time since the handful of cases that

8

The only attorneys whose work is at issue on the current
motion and who were not the subject of our earlier rate assessment
are Ms. Li and Ms. Moon. Ms. Li is a 2008 law school graduate and
thus had four to six years of experience during the period when she
worked on this case for AALDEF. (See Li Decl. ¶¶ 6-7). She suggests
a $275.00 hourly rate and reports that she has recently been
awarded that amount in an FLSA case. (Id. ¶ 8). See Ho v. Sim
Enters., Inc., 11-cv-2855 (PKC), docket no. 74 (S.D.N.Y. Sept. 10,
2014). As she notes, moreover, attorneys with comparable or less
experience who were involved in similar types of litigation have
been awarded this rate. See, e.g., Gurung, 851 F. Supp. 2d at 597;
Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, *13 (S.D.N.Y.
May 14, 2012). Accord, e.g., Black, 2015 WL 1958917 at *6 (awarding
$300.00 for associate with eight years of experience). Under the
circumstances, a $275.00 hourly rate for Ms. Li is entirely
reasonable.

As for Ms. Moon, who until recently was an associate at
Shearman & Sterling, plaintiffs seek a $300.00 rate for her work.

---

have permitted such high rates, (2) the likelihood that Shearman
& Sterling has a more substantial overhead than other small or
midsize plaintiffs' firms litigating FLSA cases, and,
importantly, (3) defendants' failure to oppose this motion, we
decide close questions about the reasonableness of requested
rates in favor of plaintiffs.

(Shally Decl. ¶ 7). She graduated law school in 2009 and worked with the firm until February 2014. (Id. & n.1). Since her colleague Jung Yoo -- who is two years junior to her (id. at ¶ 7) -- was previously assigned an hourly rate of $300.00, see Kim, 2014 WL 2514705 at *1-2, the application for the same rate for Ms. Moon is also fully justified.[17]

3. The Amount of Compensable Time

In determining how much attorney time should be compensated, the court initially looks to the amount of time spent on each category of tasks, as reflected in contemporaneous time records. E.g., Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013, *1 (S.D.N.Y. Apr. 24, 2007) (citing New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983)). See also Rosendo v. Everbrighten Inc., 2015 WL 1600057, *9 (S.D.N.Y. Apr. 7, 2015). It then must determine how much of that time was "reasonably expended." Malletier, 2007 WL 1284013 at *1 (internal quotations omitted). See also Briese, 2010 WL 3958737 at *1 . To do so "the court looks to its own familiarity with the case

---

[17] We note also that all of the Shearman & Sterling attorneys involved in this lawsuit are being assigned rates well below their customary commercial billing rates. (See Shally Decl. ¶ 7).

and . . . its experience generally as well as to the evidentiary submissions and arguments of the parties." <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotations omitted).

This analysis takes into consideration overstaffing, the skill and experience of the attorneys, as well as redundant, excessive, or unnecessary hours. <u>Id.</u> The court must consider the "contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done," <u>Carey</u>, 711 F.2d at 1148, and is required to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994). In calculating reasonable hours, the essential consideration is whether a reasonable attorney would have expended similar hours in pursuit of the case. <u>See</u>, <u>e.g.</u>, <u>Miroglio S.P.A. v. Conway Stores, Inc.</u>, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (quoting <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir.1992)).

If the court finds that some of the time spent was not reasonably necessary to the outcome, it should reduce the time for which compensation is awarded. <u>See</u>, <u>e.g.</u>, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-37 (1983); <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 876

(2d Cir. 1998). Such reductions are appropriate not only for work on unsuccessful claims and arguments, but also for inefficient or duplicative work. See Hensley, 424 U.S. at 434-35; In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). "In reducing a claim for time spent, the court may 'use a percentage deduction "as a practical means of trimming fat from a fee application."'" Malletier, 2007 WL 1284013 at *1 (quoting McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)).

In this case, plaintiffs have documented, and seek reimbursement for, a very substantial block of hours. On the assumption that they do not propose to reduce the documented number of hours of Ms. Huizar and the four Shearman & Sterling lawyers, we calculate that they are requesting payment for more than 2,791 attorney hours.[18] We recognize that this lawsuit encompassed eleven plaintiffs who took their respective cases to trial[19] and that the history of the defendant restaurants' dealings with the plaintiffs

_____

[18] We calculate this sum based on the representation that plaintiffs propose a 30 percent reduction in the modified total of 487.8 hours for Ms. Joynes, which would yield a net total of 341.46 hours.

[19] As noted, a number of plaintiffs dropped out of the lawsuit (see Joint Pre-Trial Order p. 7 [docket no. 101]), and thus time spent on their respective claims is not compensable.

spanned upwards of 17 years. Moreover, the claims involved not merely the failure to pay minimum wage and overtime during an extensive period of time, but also a variety of other violations, see Kim, 2015 WL 2222438 at *1-22, all of which necessitated an expansive investigation and discovery program by plaintiffs' counsel, including depositions of the five original defendants and their accountant, as well as preparation for, and attendance at, the depositions of all of the plaintiffs. (See, e.g., Shally Decl. ¶ 6). In addition, there were a number of discovery disputes that required resort to court adjudication, see, e.g., Kim v. Kum Gang, Inc., 2014 WL 2081775 (S.D.N.Y. May 12, 2014), and even a forensic computer search (see Shally Decl. Ex. A pp. 13-16), as well as a summary-judgment motion on behalf of one of the individual defendants (see docket nos. 61-65) and an in limine motion (see docket nos. 98-100), all of which also required briefing. All of that said, a review of the time records persuades us that the amount of time for which plaintiffs seek reimbursement, even as adjusted by reductions for "billing judgment", exceeds, in some instances, what was reasonably necessary to litigate this case.

Given the fact that plaintiffs were simultaneously represented by as many as eight lawyers at three different legal offices, it is not surprising that a fair amount of time was devoted to consulting

13

amongst the lawyers and that in some instances litigation events took place with more attorneys involved than seems -- at least in retrospect -- reasonably necessary. We start from the premise that multiple staffing of a lawsuit, particularly one involving as many clients as this one, is not <u>per</u> <u>se</u> unreasonable, and that consultation between lawyers is, to some degree, unavoidable and, at times, essential to the successful prosecution of the lawsuit. <u>See</u>, <u>e.g.</u>, <u>Danaher Corp. v. Travelers Indem. Co.</u>, 2015 WL 1647435 (S.D.N.Y. Apr. 14, 2015); <u>Briese</u>, 2010 WL 3958737 at *2; <u>Raniola v. Bratton</u>, 2003 WL 1907865, *5 (S.D.N.Y. April 25, 2003); <u>Bridges v. Eastman Kodak Co.</u>, 1996 WL 47304, *6 (S.D.N.Y. Feb. 6, 1996), <u>aff'd</u>, 102 F.3d 56 (2d Cir. 1996). Indeed, in a case as factually and legally complex as this, we would expect plaintiffs to be represented by more than one or two lawyers, as a matter of good practice. That said, the time records reflect a number of inefficiencies, including periodic overstaffing, as well as claims for reimbursement of certain activities that are not properly compensable or else are to be compensated at reduced rates. We provide below some examples.

First, the Shearman & Sterling records reflect an extensive amount of time attributable to what are described as a "co-counsel agreement" and an "engagement letter". These entries total 11.6

14

hours (Shally Decl. Ex. A at August 9, 12, 14, 27, 28, 30 & 31, 2012), and the work itself -- including the need for these documents -- is unexplained. While a multi-office form of representation may have been desired by counsel, we see no basis for charging defendants for the time spent in documenting this arrangement, much less for the number of hours that may have been generated by Shearman & Sterling lawyers on this project.

Second, in October 2012 and then again in December 2012 plaintiffs served interrogatories on defendants. The time records reflect 6.2 hours devoted to the first document (Li Decl. Ex. 1 at Oct. 9, 2012; Shally Decl. Ex A at Oct. 9, 2012 (Yoo)), which in fact consists of only one question -- asking for the last known address of defendant Kyung Le Yoo. (Docket no. 36). The claimed amount of time for drafting this single request is plainly excessive. As for the second set of interrogatories, on which multiple Shearman & Sterling attorneys were assertedly required to spend 20 hours (Shally Decl. Ex. A at Dec. 6, 8, 10, 13, 14, 17, 18 & 21, 2012), that document consists of a standard set of definitions and instructions and 24 questions that ask, in substance, for the identities of witnesses to various actions by defendants in possible violation of the labor laws. (Docket no. 45) Although the drafting of these questions undoubtedly required some

amount of time, we note that they are fairly standard questions to be posed in FLSA type cases, and although counsel at Shearman & Sterling may have been unacquainted with that practice area, they were working with other attorneys who had substantial experience in this type of litigation and who could presumably have provided model sets of interrogatories to expedite the process. Furthermore, in view of the very generous hourly rates that the firm is seeking here, we would expect those elevated rates to reflect an ability by counsel to perform needed tasks with greater efficiency than most lawyers, rather than with less.

Third, certain events in the case -- notably depositions of the defendants -- appear to have drawn the interest, and presence, of numerous lawyers on plaintiffs' team. In particular, the time records reflect attendance at the March 20, 2013 deposition of defendant Chunsik Yoo by at least six plaintiffs' attorneys -- Mr. Kimerling, Ms. Joynes, Ms. Li, Ms. Moon, Mr. Yoo and Ms. Lee. Although Ms. Lee reports attending for only a "portion" of the deposition, the collective time devoted solely to attendance by the six attorneys totals as much as 47.1 hours. (Shally Decl. Ex. A (referring to Moon, Yoo and Lee); Li Decl. Ex. 1; Kimerling Decl.

Ex. 1; Joynes Decl. Ex. 1).[20] While such mass attendance may be educational for less experienced lawyers, unrestrained billing for it plainly reflects overreach.

A similar instance of over-billing for a deposition is found in connection with the April 2, 2013 deposition of defendant Ji Sung Yoo. Once more, six of plaintiffs' lawyers attended and are billing for their attendance, with the total time devoted to this event amounting to 44.3 hours. (Kimerling Decl. Ex. 1; Li Decl. Ex. 1; Joynes Decl. Ex. 1; Huizar Aff. Ex. 1; Shally Decl. Ex. A (referring to Moon and Yoo)). Again, this billing is excessive, even granting that Mr. Yoo was probably the most important witness for defendants.

Not surprisingly, we find a similar pattern when plaintiffs

---

[20] We note that the exact number of hours involving solely presence at the deposition is a matter of mild speculation because several attorneys bundle multiple tasks into the same time entry without separately specifying the time devoted to each task (see Shally Decl. Ex. A at March 20, 2013 (Moon & Lee)) -- a practice commonly referred to as block billing. See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, 2015 WL 3444896, *12 (E.D.N.Y. May 28, 2015) (citing cases). Since, however, it appears that the deposition lasted around eight hours (e.g., Joynes Decl. Ex. 1 (listing 8.7 hours for attendance at deposition); Kimerling Decl. Ex.1 (listing 7.5 hours)), the total figure that we note above is likely to be a fairly accurate calculation of the actual amount of time collectively spent by counsel in attending this deposition.

deposed defendant Kyung Le Yoo on June 3, 2013. On that occasion four billing lawyers were in attendance for plaintiffs, and they seek to charge for as much as 34.1 hours.[21] (Shally Decl. Ex. A (referring to Moon, Lee & Yoo); Joynes Decl. Ex. 1).

Fourth, several of the lawyers list numerous entries for travel time, and charge for this time at the full allowable rate for legal work. (E.g., Joynes Decl. Ex. 1 at May 9, Aug. 7, Aug. 8, Aug. 27, 2013; Huizar Aff. Ex. 1 at May 6 & 9, July 30, Aug. 7, & 8, 2013). Travel time by counsel is compensable, but generally is required to be billed at half rate. See, e.g., Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 139 (2d Cir. 2008); Shiran Chen v. Arts Nail Putnam Valley, Inc., 2015 WL 2381033, *2 (S.D.N.Y. May 13, 2015). This also counsels in favor of at least a modest reduction in listed fees.

Fifth, we find miscellaneous individual items that are not properly compensable. These include items that are not adequately described (e.g., Huizar Aff. Ex. 1 at July 11, 2013 ("email")); discussions about media coverage (e.g., Shally Decl. Ex. A at Mar.

---

[21] Again, because of block billing by two lawyers (see Shally Decl. Ex. A at June 3, 2013(Lee & Moon)), we cannot arrive at a precise figure.

23 & Mar. 27, 2015); dealings with a plaintiff who ultimately withdrew from the case and whose testimony was not used at trial (e.g., Huizar Aff. Ex. 1 at April 8 & 29 & May 6, 2013); and time devoted to discovery from defendants who were later dropped from the case and whose deposition testimony was not used at trial. (E.g., id. at April 16, 2013).

Finally, the time records suggest an excessive amount of time -- particularly in the Shearman & Sterling records -- devoted simply to unexplained reviewing of documents and "team" meetings or other forms of communication. (E.g., Shally Decl. Ex. A at Aug. 2, Aug. 3, Aug. 7, Aug. 8, Aug. 22, Aug. 23, Sept. 6, 2012; Feb. 28, Mar. 1, Mar. 7, Mar. 12, Mar. 25, Apr. 12, May 22, May 30, June 6, June 27, Aug. 1, Aug. 1, Aug. 5, Sept. 4, 2013; Jan. 27, 2014). In making this observation, we hasten to note that document review and coordination among the many lawyers pursuing the case was of course required, but the amount of time devoted to these activities by multiple attorneys seems to us -- obviously in hindsight -- more substantial than needed if one hypothesizes an optimal team size and efficiency of coordination.[22]

---

[22] We note that document production by defendants was, with limited exceptions, fairly insubstantial, particularly with regard to time and wage records. See Kim, 2015 WL 2222438 at *4.

Given these considerations we conclude that some amount of trimming of the fee requests is appropriate. We therefore make the following awards to plaintiffs:

| | | |
|---|---|---|
| Mr. Kimerling | $112,320.00 | (unaltered) |
| Ms. Li | $ 77,380.00 | (a 10% reduction) |
| Ms. Joynes | $ 64,400.00 | (unaltered) |
| Ms. Huizar | $ 71,808.00 | (a 20% reduction)[23] |
| Shearman & Sterling | $389,208.00 | (a 20% reduction) |
| Total | $715,116.00 | |

II. <u>Disbursements</u>

As noted, AALDEF seeks reimbursement for the $350.00 filing fee, and Shearman & Sterling ask to be compensated for $50,787.17,

---

[23] Plaintiffs do not specify any reductions in the gross total of 448.8 hours listed for Ms. Huizar, nor do they identify which of her functions they consider to be paralegal or clerical in nature. If left unadjusted, the lodestar for her at $200.00 per hour would total $89,760.00. To account for numerous entries reflecting paralegal or clerical tasks, many entries reporting solely travel time, attendance at a number of depositions that were overstaffed and that Ms. Huizar did not conduct, work pertaining to former plaintiff Eduardo Aguilar, work pertaining to former defendant Yi Yong Yoo and some entries that provide inadequate work descriptions, we reduce this total by twenty percent, to $71,808.00.

in disbursements, representing a wide variety of out-of-pocket and related expenses. We have reviewed the listed items and find that they are the sort of disbursements that attorneys would "ordinarily charge[] to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).[24] Although the Shearman & Sterling expenses are substantial, a number of circumstances compelled such expenditures. These include the fact that many depositions had to be conducted, with resulting transcripts; that Westlaw research was heavily, but appropriately, utilized, generating substantial charges[25]; that translation services were required for dealing with plaintiffs and for deposing defendants; that plaintiffs were required to undertake a forensic search of defendants' computer system because of the failure of defendants to produce documentation underlying charts that they were seeking to use in

---

[24] Although LeBlanc-Sternberg was applying 42 U.S.C. § 1988 in assessing the reimbursement of litigation disbursements, LeBlanc-Sternberg, 143 F.3d at 763, the same standards are routinely applied in lawsuits under the FLSA. See, e.g., Cesario v. BNI Constr., Inc., 2008 WL 5210209, *10 (S.D.N.Y. Dec. 15, 2008).

[25] The Second Circuit has definitively held that computer research charges may be awarded as part of an award under a fee-shifting statute, see Arbor Hill Concerned Citizens Ass'n v. Cnty. of Albany, 369 F.3d 91, 97-98 (2d Cir. 2004), a conclusion that clarifies the law in this circuit after a period of uncertainty on this question. See, e.g., Cesario, 2008 WL 5210209 at *10 n.3 (discussing United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153 (2d Cir. 1996), and its progeny).

this case and that plaintiffs needed expedited trial transcripts
for prompt post-trial briefing.


     In short, plaintiffs may recover the cited disbursements,
totaling $51,137.17.


CONCLUSION


     For the reasons stated, plaintiffs' motion for an award of
fees and disbursements is granted to the extent that they are
awarded $715,116.00 in attorney's fees and $51,137.17 in
disbursements.



**Dated: New York, New York**
        **June 5, 2015**



                          _____
                          **MICHAEL H. DOLINGER**
                          **UNITED STATES MAGISTRATE JUDGE**




Notice to counsel via ECF.